OPINION
BARRY, Circuit Judge.
Marina District Development Co., LLC t/a “the Borgata” appeals the decision of the District Court affirming the Bankruptcy Court’s approval of a Chapter 13 plan for debtor Peter Richmond, a habitual gambler who filed for bankruptcy, in large part, because of a debt owed to the Borga-ta casino. The Borgata argues that the Bankruptcy Court erred when it concluded that Richmond’s income was sufficient to merit confirmation of his plan and that Richmond filed both his plan and petition in good faith. For substantially the same reasons as expressed by the District Court, we will affirm.
I.
Richmond is a gambler who has, at times, incurred significant debt to the Borgata casino. On August 17, 2006, Richmond filed a voluntary Chapter 13 bankruptcy petition listing $250,997.53 in unsecured debt owed to his mother, a timeshare, and the Borgata, most of the debt being owed to the Borgata. After the first creditor’s meeting, Richard amended his schedules to disclose, among other things, that he had transferred his interest in his marital residence to his wife, for $1.00, on May 18, 2004. The deed was recorded on July 27, 2004, two years and three weeks prior to his bankruptcy filing.
Richmond was retired at the time of his bankruptcy filing, and his sources of income, in addition to support from his wife, were (1) monthly payments from an investment in Mexican slot machines, which averaged about $250 per month but varied in amount, ranging from $2,400 to zero per month, and (2) monthly payments of $403 per month from the repayment of a secured loan made to a gambling acquaintance. Richmond’s plan, as amended, proposed payments of $653 per month for 60 months to pay attorneys fees and unsecured creditors pro rata.
The Borgata objected to confirmation of the plan and sought dismissal of the case as a bad faith filing, arguing that the transfer of the interest in marital property was a fraudulent conveyance, that the plan was proposed in bad faith, and that Richmond would be unable to make all of his *199 payments under the plan. The Bankruptcy Court heard testimony on April 10 and May 2, 2007, and rejected the Borgata’s arguments by opinion dated October 4, 2007 and order dated October 16, 2007.
The Bankruptcy Court overruled each of Borgata’s objections to confirmation of the plan and denied the Borgata’s motion to dismiss, finding that Richmond’s petition was filed in good faith. The Borgata appealed to the District Court, and on February 29, 2008, 2008 WL 577294, the District Court affirmed. The Borgata now appeals the District Court’s decision, arguing that the Bankruptcy Court erred both in confirming the plan and in failing to dismiss the petition as a bad faith filing.
II.
The District Court had jurisdiction to review the decision of the Bankruptcy Court under 28 U.S.C. § 158(a), and we have jurisdiction to review the decision of the District Court under 28 U.S.C. § 158(d). We exercise “plenary review over the District Court’s appellate review of the Bankruptcy Court’s decision, and exercise the same standard of review as the District Court in reviewing the Bankruptcy Court’s determinations.” In re Winstar Commc’ns, Inc., 554 F.3d 382, 389 n. 3 (3d Cir.2009). We review the Bankruptcy Court’s factual findings for clear error, but exercise plenary review over that Court’s interpretation and application of those facts to the law. Id. at 395.
A. Confirmation of the Plan
The Bankruptcy Code, 11 U.S.C. § 1325(a), provides, in part, that the court shall confirm a plan if “the debtor will be able to make all payments under the plan and to comply with the plan,” § 1325(a)(6), and if “the plan has been proposed in good faith and not by any means forbidden by law,” § 1325(a)(3). The Borgata argues that the Bankruptcy Court erred in finding that Richmond’s plan met these requirements.
First, the Borgata argues that Richmond’s income was both inadequate and too speculative to merit confirmation of the plan.[1] It is undisputed that Richmond’s income consists of monthly payments from the slot machine investment that vary in amount, monthly payments on the secured loan that are sometimes paid late, and support from his wife. The Bankruptcy Court recognized that Richmond’s sources of income are not always consistent, but noted that Richmond’s primary source of support is actually his wife, who receives monthly payments from a family trust. The Court emphasized that Richmond made all of his regular plan payments to the Trustee for twelve months of the preconfirmation process and that he consistently made substantial prepetition payments pursuant to an informal payment plan. The Court concluded, based on these undisputed facts, that Richmond’s “plan payment history provides a sufficient basis to demonstrate the debtor’s ability to continue to make his plan payments.” (App. at 13.) We agree with the District Court that the Bankruptcy Court did not commit clear error in overruling the Borgata’s objection to confirmation of the plan on this ground.
Second, the Borgata argues that Richmond proposed his plan in bad faith because his transfer of his interest in the marital home constituted a fraudulent conveyance and demonstrated bad faith when coupled with the timing of his bankruptcy *200 filing (two years and three weeks after the transfer).[2]
The Borgata’s concern about Richmond’s transfer of his interest in the marital home has been central to its argument throughout this case. Before the Bankruptcy Court, the Borgata framed its argument as to the marital home transfer as one under 11 U.S.C. § 1325(a)(4), which provides that the value of the property to be distributed under a debtor’s Chapter 13 plan may not be less than would be received if the debtor’s property were liquidated under Chapter 7. The Court concluded that a Chapter 7 trustee would be unlikely to succeed in avoiding the transfer either pursuant to 11 U.S.C. § 548(a) or pursuant to the New Jersey Uniform Fraudulent Transfer Act because the facts did not show actual intent to hinder, delay, or defraud. The Borgata does not renew its argument as to § 1325(a)(4) before us, instead arguing, more generally, that the circumstances of the transfer demonstrate that Richmond filed his plan in bad faith.
The facts surrounding the transfer of the interest in the marital home are undisputed. On May 18, 2004, Richmond transferred his interest to his wife for $1.00. Following the transfer, his wife gave a mortgage on the home for $200,000 to her family trust, the trust deposited the $200,000 into a joint account held by Richmond and his wife, and the money was used by Richmond to pay off a prior debt owed to the Borgata. Effectively, this allowed Richmond to convey his interest in the home to his wife in return for $200,000 (approximately half the fair market value of the home), which he immediately used to pay an existing debt. The Bankruptcy Court concluded that these facts surrounding the transfer, coupled with the fact that the transfer did not render Richmond insolvent, did not evidence an intent to defraud, delay, or hinder creditors, despite the “inference of [bad] intent” that would ordinarily arise from a transaction between spouses for nominal consideration. This finding, supported by the evidence described above, was not clearly erroneous.
Based on these undisputed facts and examining the record as a whole, the District Court correctly concluded that, other than the insinuation of impropriety by virtue of the timing of Richmond’s bankruptcy filing, “the record is devoid of any evidence that the Plan was proposed in bad faith.” (App. at 42.) As both the Bankruptcy Court and the District Court emphasized, the undisputed facts demonstrated that (1) the plan was funded primarily by Richmond’s wife’s monthly income, (2) Richmond’s alleged gambling addiction had not impacted his ability to make pre-confirmation plan payments for the preceding 12 months, and (3) Richmond did amend his schedules to reflect the prepetition transfer of his interest in the marital home, despite the fact that that disclosure was not explicitly required because it occurred more than two years prepetition. Accordingly, we conclude that the Bankruptcy Court did not err in confirming Richmond’s plan.
B. Failure to Dismiss the Petition
The Borgata also contends that the Bankruptcy Court erred when it declined to dismiss the petition due to Richmond’s prepetition bad faith. The Code provides *201 that a Chapter 13 case may be dismissed “for cause.” 11 U.S.C. § 1307(e). The statute does not define “cause,” but the Supreme Court has held that “for cause” implicitly authorizes courts to dismiss a Chapter 13 case for prepetition bad faith conduct. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373-74, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).
The Borgata argues that Richmond acted in bad faith because the transfer of his interest in his marital home constituted a fraudulent conveyance, the debt to the Borgata was incurred by means of deception and fraud, and Richmond’s motive in filing the petition was to avoid paying his debt to the Borgata. The Bankruptcy Court, examining the uncontested facts, however, found: “Here, I am convinced that the debtor has filed this case in an honest effort to repay this credit, that the case was filed in good faith, and should not be dismissed.” (App. at 31.)
For the reasons discussed above, the Bankruptcy Court did not clearly err when it concluded that the transfer of interest in the marital home was not a transaction intended to defraud creditors. As to the circumstances by which the debt to the Borgata was incurred, the Court found that the Borgata could not assert that it reasonably relied on the counter-checks (also called “markers”) signed by Richmond to believe that Richmond had the funds on hand to immediately satisfy the debt. The Court found that the Borgata had permitted Richmond more than 45 days to satisfy prior outstanding markers, and, in the case of the markers invoked here, took no action for several months until Richmond initiated contact and proposed a payment plan, which he then followed. Finally, the Court emphasized the fact that Richmond consistently made monthly prepetition payments in an effort to reduce his debt, which demonstrated to the Court that he did not seek to avoid the debt. The Court’s finding that Richmond filed his petition in good faith is supported by these undisputed facts, and the Court did not err in denying the Borgata’s motion to dismiss the petition “for cause.”
III.
We will affirm the order of the District Court affirming the order of the Bankruptcy Court.

. Before the Bankruptcy Court, the Borgata framed this argument as one under 11 U.S.C. § 109(e) (a Chapter 13 debtor must be an "individual with regular income”).

. The Borgata also argues that Richmond demonstrated bad faith because he has “made no effort to obtain employment” and could not explain the prepetition transfer and diversion of over $100,000 in joint accounts with his wife. (Appellant's Br. at 18.) These allegations, not addressed by either the Bankruptcy Court or the District Court, are not developed in the Borgata’s brief, and we will not consider them further.